UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DORIS ANN DUMPH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:17-CV-74-JD-JEM |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

In this case, plaintiff Doris Ann Dumph appeals the denial of her claim for Social Security Disability Insurance Benefits. For the following reasons, the Court remands this matter to the Commissioner for further proceedings consistent with this opinion.

**FACTUAL BACKGROUND**

While at work on April 28, 2012, Ms. Dumph felt a pop in her right elbow while lifting a box. She was diagnosed with lateral epicondylitis (commonly referred to as "tennis elbow"). She did not work for approximately six months following this injury, but eventually returned until her release in March 2013. During that yearlong period, she pursued multiple conservative treatment options to alleviate the pain in her right arm, including pain medication (Percocet, Vicodin, ibuprofen), occupational therapy, injections, and wearing a supportive brace and elbow band. Meanwhile, she began to use her non-dominant left arm at work in place of her right arm, to avoid aggravating her condition. This only made matters worse. By March 2013, she was experiencing pain and was diagnosed with lateral epicondylitis in her left arm as well, likely due to overuse.

1

Conservative treatment failed to address the pain in Ms. Dumph's right arm, and so she underwent a right elbow lateral epicondylar debridement in April 2013, performed by Dr. David Cutliffe. She proceeded with post-surgical therapy and added Norco to her regimen of pain medications. Despite all of this, her pain persisted. Now unemployed, Ms. Dumph does what she can around the house, but requires significant assistance from her husband and daughter with many tasks. At night, her chronic pain keeps her awake. During the day, she makes up for lost sleep by spending much of her waking hours resting, but even still requires two or three naps each day. The steady stream of medication she takes for her upper extremity pain renders her drowsy and tired, limiting her ability to drive.

On September 16, 2013, Ms. Dumph applied for disability claiming inability to work due to her ongoing upper extremity pain. On November 19, 2015, the ALJ found that Ms. Dumph was limited in her ability to work, but not as severely as alleged and that there were jobs in the national workplace that a person with Ms. Dumph's limitations could perform. Accordingly, the Commissioner denied Ms. Dumph's claim for benefits.

## STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The Court will affirm the Commissioner's denial of disability benefits if it is supported by substantial evidence. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of

the claimant, the Court will affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court does not reweigh evidence, resolve conflicts, decide questions of credibility or substitute the Court's own judgment for that of the Commissioner. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). The Court does, however, critically review the record to ensure that the ALJ's decision is supported by the evidence and contains an adequate discussion of the issues. *Id.* The ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection; she may not ignore an entire line of evidence that is contrary to her findings. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must also "articulate at some minimal level his analysis of the evidence" to permit informed review. *Id.* Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, he must provide a "logical bridge" between the evidence and her conclusions. *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009).

**DISCUSSION**

Disability benefits are available only to individuals who are disabled under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations contain a five-step test to ascertain whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4). These steps require the Court to sequentially determine:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

20 C.F.R. § 404.1520(a)(4); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, the Commissioner acknowledges disability. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, the ALJ must assess the claimant's RFC between steps three and four. The RFC is then used to determine whether the claimant can perform past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the burden of proof in steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Ms. Dumph raises two main arguments in support of her request for remand. First, she argues that the ALJ failed to properly evaluate her credibility, specifically with regard to her allegations that she needs rest periods during the workday due to her pain's interference with sleep and her pain medication's side effects. Second, she contends that the vocational findings are founded on legal error and not supported by the record. The Court need not address this second argument because of the ALJ's insufficient credibility assessment. Since this shortcoming affected the listing and RFC analyses, this issue will need to be reconsidered on remand.

**A. Credibility**

Ms. Dumph challenges the ALJ's finding that her statements concerning the intensity, persistence, and limiting effects of the symptoms caused by her bilateral epicondylitis were "not entirely credible." (Tr. 23). As explained below, the Court agrees that the reasons provided by the ALJ to question Ms. Dumph's credibility are insufficient.

Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness, the Court will not overturn an ALJ's credibility determination unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). The ALJ's decision must, however, provide specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and must be sufficiently specific or clearly articulated so the individual and any subsequent reviewers can assess how the adjudicator evaluated the symptoms. SSR 16-3p (superseding SSR 96-7p)[1]; *see also Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013). An ALJ's failure to give specific reasons for a credibility finding, supported by substantial evidence, is grounds for remand. *Id.*; *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009). The Court finds that the ALJ committed these errors here, and that as a result, his credibility finding is not supported by substantial evidence.

Ms. Dumph maintains that she cannot sustain a full eight-hour work day due to drowsiness and tiredness stemming from the pain in her upper extremities and her related medication. [DE 18 at 5-6] However, the ALJ did not adequately address this potential limiting effect of Ms. Dumph's symptoms. It is well-established that, while the ALJ need not address

---

[1] In 2016, the Social Security Administration issued SSR 16-3p, which supersedes SSR 96-7p. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). SSR 96-7p referred to a claimant's "credibility," but SSR 16-3p removed that term in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p, 2016 WL 1119029, at *1. The new SSR was issued after the ALJ's decision in this matter, however, it was only a clarification of the law and not a change in the law. Regardless, under either SSR version the outcome in this case would be the same.

5

every piece of evidence in the record, he cannot ignore an entire line of evidence that contradicts his findings. *Zurawski*, 245 F.3d at 888. Ms. Dumph's potential need for rest repeatedly came up in this case. At the hearing, she testified that she does not drive much because her pain medications make her drowsy and "sleepy." (R. 62). She later expressed her reluctance to try other pain medications, such as morphine, because she already feels "drugged-up," and "sleepy all the time" from her current regimen. (R. 78). Her husband likewise testified that "the medication does a lot for her as far as making her sleepy." (R. 91). Ms. Dumph also explained that her arm pain keeps her awake at night for several hours after retiring to bed, and that it wakes her up once asleep. (R. 62). Mr. Dumph further stated that his wife's pain impacts her sleeping "[a]ll the time" and that he usually has to move to the couch because of her efforts to get comfortable. (R. 90). In his third party function report, Mr. Dumph additionally noted that his wife needs to get up at night to take pain medication. (R. 237). Finally, Ms. Dumph testified that, to compensate for her sleep loss, she has to take 15- to 20-minute naps throughout the day, even though she already spends much of the day resting. (R. 62-63). Her husband confirmed this as well. (R. 91).

Ms. Dumph's testimony also had some support in the medical records. On January 29, 2013, Dr. Cutliffe noted that the pain associated with Ms. Dumph's epicondylitis interrupts her sleep and expressed concern that she may have to live with this chronic pain. (R. 370, 372). Later that year, daily occupational therapy records from July 12, 2013, noted that Ms. Dumph had two recent "bad nights" due to her aching pain and that she got no sleep at all the night before. (R. 407). At her functional capacity evaluation on September 4, 2013, Ms. Dumph reported severely disabling pain to the extent that it causes her "difficulty talking and concentrating on anything

6

but the pain." (R. 322). According to summary report, "[n]eeding to lie down … [is] common at this level of pain." *Id.*

Remarkably, the ALJ did not address any of this evidence. When outlining Ms. Dumph's alleged symptoms, he only briefly listed that she needed medication to help her sleep, and that her pain medications caused her to be drowsy. (R. 23). The ALJ made *no* other mention of these issues in his opinion, let alone in his credibility discussion, except for a fleeting reference to Mr. Dumph's testimony that his wife takes naps daily. (R. 25). The ALJ found Ms. Dumph's statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely credible "for the reasons explained in this decision." (R. 23). But within his decision, the ALJ simply did not explain *why* Ms. Dumph's complaints of pain-related tiredness and medication-induced drowsiness lack credibility. That failure is inexplicable given that these issues were extensively explored at the hearing and supported in the medical records, and moreover contravenes Seventh Circuit precedent. *See Golembiewski v. Barnhart,* 322 F.3d 912, 917 (7th Cir. 2003) (remanding in part because the ALJ ignored evidence of several of the claimant's purported symptoms). On remand the ALJ will need to address how Ms. Dumph's statements concerning the limiting effects of her pain are not credible, and how, if at all, the medical record discredits her statements.

In response to Ms. Dumph's argument, the Commissioner lists the following factors as relevant to the evaluation of Ms. Dumph's symptoms: "precipitating and aggravating events, daily activities, medication taken to alleviate pain or other symptoms, and treatment (other than medication) received for the relief of pain or other symptoms." [DE 21 at 3] (citing 20 C.F.R. § 404.1529). She then went on to explain how the ALJ considered all of these factors when addressing Ms. Dumph's degree of pain. *Id.* However, the Commissioner's paraphrased list does

not include the instruction that the ALJ should consider "[t]he type, dosage, effectiveness, *and side effects*" of Ms. Dumph's medication. § 404.1529(c)(3)(iv) (emphasis added). The ALJ considered the *type* of pain medication taken by Ms. Dumph, but did not account for the complained-of side effects (drowsiness and tiredness) that clearly existed in the record. *See Flores v. Massanari*, No. 00-4334, 2001 WL 1092796, *5 (7th Cir. Sept. 13, 2001) (ordering remand where ALJ failed to address testimony from both claimant's stepdaughter and attorney that his prescribed medications made him foggy and fatigued). Nor did he make any connection between his discussion of Ms. Dumph's symptoms and whether he believed she needed daily rests as a result of her medication and nocturnal pain in light of the diminished credibility he gave her complaints. Thus, he failed to support his determination with the necessary logical bridge. *Terry*, 580 F.3d at 475 (ordering remand where ALJ determined claimant's complaints of disabling pain were not credible because she had not "reported" any side effects to the SSA but where the record contained reports that the medication made her drowsy).[2]

Ultimately, the ALJ's insufficiently supported assessment of the claimant's testimony and credibility calls into question the soundness of the ALJ's RFC finding. (R. 22) ("The claimant's allegations are not fully credible …. In light of the foregoing evidence, the undersigned is unable to conclude that, as a result of claimant's impairments, that she was

---

[2] The Commissioner additionally argues that the ALJ's findings are consistent with the state agency psychological consultants, who found only mild limitations with regard to concentration, persistence, and pace. [DE 21 at 5] But the ALJ and the consultants reached those findings when assessing the limitations caused by Ms. Dumph's anxiety disorders, not her bilateral epicondylitis. (R. 21, 124, 134). At Step 2, the ALJ determined Ms. Dumph's anxiety to be nonsevere. (R. 21). Ms. Dumph does not challenge that portion of the ALJ's opinion. The Commissioner further notes that Ms. Dumph did not check the boxes next to "memory, concentration, understanding, or following instructions" in her function report [DE 21 at 5], but the ALJ did not address this purported inconsistency in his opinion and thus the Court will not consider it. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (noting that *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943) "forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself has not embraced").

limited beyond the capacity for work as indicated in the residual functional capacity as found herein."); *see* 20 C.F.R. § 404.1545(a). In turn, the insufficiently supported RFC finding led the ALJ to ask hypotheticals of the VE which omitted claimed (and potentially credible) limitations caused by Ms. Dumph's upper extremity pain. In fact, the VE even testified that if a hypothetical person needed additional unscheduled breaks or was off task more than 10% of the workday, then that individual would be unemployable. (R. 117). Accordingly, the VE's testimony cannot be relied upon as an accurate indicator for the type of work that Ms. Dumph is capable of performing.[3] *See Young*, 362 F.3d at 1003-05 (the ALJ must determine the claimant's RFC before performing steps four and five because a flawed RFC typically skews questions posed to the VE); SSR 96-8p. Thus, until the hypotheticals presented to the VE include the functional limits that the ALJ accepts as credible, and the ALJ adequately explains the claimant's actual limitations and resulting RFC based on the relevant medical evidence, 20 C.F.R. §§ 404.1545, 404.1546(c), step five cannot be affirmed in this appeal. *See Young,* 362 F.3d at 1003-05. The remedy for the shortcomings noted herein is further consideration, not the immediate award of benefits requested by Ms. Dumph's counsel. [DE 18 at 10]

---

[3] Admittedly, the Seventh Circuit has occasionally concluded that a VE has familiarity with the claimant's limitations, despite any gaps in the hypothetical, when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations and the VE considered that evidence when indicating the type of work the claimant is capable of performing. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, n. 5 (7th Cir. 2010) (citing *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009); *Young*, 362 F.3d at 1003; *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *Ragsdale v. Shalala*, 53 F.3d 816, 819-21 (7th Cir. 1995); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992)). So, even though the VE here reviewed the claimant's file and listened to her testimony (R. 94), this exception does not apply here, since the VE never indicated in his responses having relied on Ms. Dumph's medical records or the hearing testimony. Rather, the VE's attention was on the limitations of the hypothetical persons posed by the ALJ, and not on the record itself or the limitations of the claimant herself. *Id*. (citing *Simila*, 573 F.3d at 521; *Young*, 362 F.3d at 1003).

## CONCLUSION

For the reasons stated above, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: February 13, 2018

/s/ JON E. DEGUILIO  
Judge  
United States District Court
